UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

ALYECE CUMMINGS and DANIEL
LAPKA, Individually and On Behalf of All
Others Similarly Situated,

               Plaintiffs,

               -against-

CHESAPEAKE ENERGY CORP., et al.,

               Defendants.

------------------------------------------------------

Index No. 16-cv-2338 (VEC)


REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE TO
THE WESTERN DISTRICT OF
OKLAHOMA


**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1

II. SECTION 1404(A) REQUIRES TRANSFER TO THE WESTERN DISTRICT
OF OKLAHOMA ............................................................................................... 3

    A. Locus Of Operative Facts ....................................................................... 4

    B. Convenience to Witnesses ....................................................................... 4

    C. Forum's Familiarity With Governing Law .............................................. 6

    D. Weight Accorded Plaintiffs' Choice Of Forum ...................................... 7

    E. Trial Efficiency And Interests Of Justice ................................................ 7

    F. Remaining Factors ................................................................................... 8

III. PLAINTIFFS' REFERENCES TO PRIOR LITIGATION REINFORCE THE
REASONS TRANSFER IS APPROPRIATE HERE ......................................... 8

IV. PLAINTIFFS' ACCUSATION OF FORUM-SHOPPING IS UNFOUNDED
AND IRRELEVANT .......................................................................................... 10

V. CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)..................................................................................................9

*Beatie & Osborn LLP v. Patriot Scientific Corp.*,
    431 F. Supp. 2d 367 (S.D.N.Y. 2006)................................................................................6

*Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*,
    865 F. Supp. 513 (2d Cir. 1989) .........................................................................................6

*Fuji Photo Film Co. Ltd. v. Lexar Media, Inc.*,
    415 F. Supp. 2d 370 (S.D.N.Y. 2006)................................................................................4

*Koster v. (American) Lumbermans Mut. Casualty Co.*,
    330 U.S. 518 (1947)............................................................................................................8

*In re Nematron Corp. Sec. Litig.*,
    30 F. Supp 2d 394 (S.D.N.Y. 1998)................................................................................5, 6

*O'Hopp v. ContiFinancial Corp.*,
    88 F. Supp. 2d 31 (E.D.N.Y. 2000) ...................................................................................8

*Polaroid Corp. v. Casselman*,
    213 F. Supp. 379 (S.D.N.Y. 1962) ..................................................................................4, 6

*Safron Capital Corp. v. Chesapeake Energy Corp.*,
    2009 U.S. Dist. LEXIS 93687 (S.D.N.Y. Oct. 6, 2009) ....................................................5

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)................................................................................................9

*Syntroleum Corp. v. Fletcher Int'l Ltd.*,
    2008 WL 4936503 (N.D. Okla. Nov. 17, 2008) .................................................................7

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)............................................................................................................8

*Ward v. Stewart*,
    133 F. Supp. 3d 455 (N.D.N.Y. 2015)................................................................................7

## I.     INTRODUCTION

Chesapeake's brief in support of the transfer motion (the "Opening Brief") demonstrated the many reasons why this case should be transferred to the Western District of Oklahoma, based on the allegations of the Complaint, facts that Plaintiffs do not dispute and the controlling legal standards under Section 1404(a).  The opposition to the motion (the "Opposition") does little to challenge that showing, and focuses instead on peripheral points that are of little consequence.

As the Opposition acknowledges, this case is about Chesapeake's decisions to undertake a note exchange offer, and to structure the offer in a manner that excluded Plaintiffs and other holders who were not QIBs (Qualified Institutional Buyers).  Plaintiffs claim that Chesapeake made those decisions because it encountered economic pressures, and that the decisions violated the non-QIBs' rights to payment under trust indentures, violated the covenant of good faith and fair dealing, and resulted in unjust enrichment of Chesapeake.  Opposition at 2-3.

Thus, for purposes of Plaintiffs' claims, it does not matter that the notes traded on the New York Stock Exchange or that the Bank of New York Mellon Trust was the indenture trustee, or that Chesapeake used dealer-managers in New York to market the offer.  Plaintiffs have essentially conceded those points by declining to sue the indenture trustee and dealer-managers.  The trustee and dealer-managers have nothing to do with the underlying claims.  If that were not the case Plaintiffs certainly would have sued them, particularly in light of their deep pockets.  The only entities other than Chesapeake that Plaintiffs elected to sue are 62 former and current Chesapeake subsidiaries, all of which are also located in the Western District of Oklahoma.

The witnesses and evidence relevant to the issues on which Plaintiffs predicate liability are concentrated near Chesapeake's headquarters in Oklahoma City, which is also the location of

the courthouse for the Western District of Oklahoma.  That is where the decisions at issue were

made, the facts and events that led to the decisions occurred, and where Chesapeake purportedly

was unjustly enriched.  Plaintiffs do not -- and cannot -- dispute any of those pivotal facts.

Oklahoma City is plainly the locus of operative facts and the center of gravity for the issues in

dispute.

Similarly, the Opposition does not contest the well-established convention that class

actions regarding securities are typically litigated in the district where the issuer has its corporate

headquarters.  Nor do Plaintiffs have anything of substance to say about *Safron Capital*, the

decision in which Judge Swain granted Chesapeake's motion to transfer a securities class action

to the Western District of Oklahoma for the *same* essential reasons present here, albeit in

circumstances that were *less* compelling.  As Judge Swain noted, the fact that the outside

attorney witnesses are located "in neighboring Texas" provides yet another reason to transfer the

case to Oklahoma.

None of the arguments that Plaintiffs make in seeking to avoid transfer is even

superficially compelling.  Plaintiffs' claim that they are "private individuals with relatively small

investments" is irrelevant because they do not live in this District, are purporting to represent a

nationwide class, are not paying for the litigation, and are represented by counsel who are in the

business of litigating securities class actions throughout the United States.  Messrs. Cummings

and Lapka were not involved in the events at issue, and have no significant testimony to give.

The witnesses who were involved in those events, and whose testimony is *critical*, are

concentrated in the Western District of Oklahoma.

In these circumstances the weight accorded Plaintiffs' choice of forum is *de minimus*.

The relative means of the parties is not a factor, because litigation costs are being paid by two

well-financed law firms that routinely fund national class actions in order to recover large fee awards.  For reasons too obvious to belabor, this is manifestly not a case in which a "transfer would simply shift the inconvenience to Plaintiffs," as the Opposition asserts at page 5.

The Opposition's assertion that because Chesapeake has "chosen" to litigate in this District "in many cases" it "cannot be heard to complain of litigating here when it is a defendant" (Opposition at 3, 5), is baseless on several grounds.  In deciding transfer motions under Section 1404(a), each case turns on its own facts.  Chesapeake "chose" S.D.N.Y. as a forum in one single case, not "many":  It sued Bank of New York Mellon Trust Co. in New York because, in sharp contrast to the facts of this case, that was where the conduct at issue was focused and New York was the only logical place to file the action.  In the only other case cited in the Opposition as evidence of Chesapeake's supposed willingness to litigate in this District, Chesapeake did not file a transfer motion because (again in sharp contrast to this case) plaintiffs sued numerous entities headquartered in New York based on decisions and activities that occurred there, and there was little basis for seeking a transfer.

Plaintiffs' claim that the transfer motion is a thinly veiled effort to evade precedent in this District bespeaks desperation.  Even if it were true (and it is not), "forum-shopping" is not a factor in the Section 1404(a) analysis.  The reasons that this transfer motion was filed are the *same* reasons that a transfer motion was filed -- and *granted* -- in *Safron Capital*.

## II.   SECTION 1404(A) REQUIRES TRANSFER TO THE WESTERN DISTRICT OF OKLAHOMA

The Opening Brief demonstrates that each factor of the Section 1404(a) analysis strongly favors transfer to the Western District of Oklahoma or is neutral.  Nothing in Plaintiffs' Opposition undermines that demonstration.

A.      LOCUS OF OPERATIVE FACTS

The Opposition attempts to obscure the overwhelming connection of the *operative* facts

to Oklahoma by citing ancillary connections to New York, none of which has a meaningful

connection to the issues in dispute.  For example, Plaintiffs claim that transfer is inappropriate

because this case will "raise many questions[] concerning the marketing and execution of the

Exchange Offer," and that the New York location of the "many dealer managers from Bank of

America Merrill Lynch, Goldman Sachs & Co., and Wells Fargo Securities" is therefore

significant.  Opp. at 9.  But the Complaint does not contain a single substantive allegation about

the "marketing and execution of the Exchange Offer," and the dealer-managers were not

involved in the decisions Plaintiffs challenge.  *See* Dell'Osso Decl. ¶ 23; Morgret Decl. ¶ 19.

Nor does it matter that the "bonds in question are registered on the New York Stock

Exchange."  Opp. at 15.  That "mechanical fact" has no connection to the charging allegations of

the Complaint, or the transactions at issue.  *See Polaroid Corp. v. Casselman*, 213 F. Supp. 379,

382 (S.D.N.Y. 1962) (transferring securities case where all "underlying transactions" occurred in

transferee forum, even though purchases and sales were effectuated on the NYSE).

B.      CONVENIENCE TO WITNESSES

The Opening Brief (at pp. 7-15) showed in great detail precisely how and why the vast

majority of party and non-party material witnesses live and work in Oklahoma, a factor that

counsels strongly in favor of transfer.  *See, e.g., Fuji Photo Film Co. Ltd. v. Lexar Media, Inc.*,

415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (convenience of "witnesses is probably the single-

most important factor in the analysis").  Almost all of the individuals involved in the decision to

make an exchange offer, and decisions regarding the structure and terms of the Exchange Offer,

including the use of the registration exemption under Rule 144A, work at Chesapeake's

headquarters in Oklahoma City and reside nearby. *See* Opening Br. at 7-15.[1]  The same is true

with respect to the work done on other aspects of the Exchange Offer, and the issuance of

Plaintiffs' notes. *See id.*  Moreover, the Baker Botts witnesses all live and work in Houston,

Texas, which is far more convenient to Oklahoma than New York. *See Safron Capital Corp. v.*

*Chesapeake Energy Corp.*, 2009 U.S. Dist. LEXIS 93687, at *5 (S.D.N.Y. Oct. 6, 2009)

(witnesses that "live and work in . . . the neighboring state of Texas" militate in favor of transfer

to Oklahoma).

Plaintiffs' argument that a transfer is inappropriate because some of Chesapeake's

directors purportedly have strong "ties" or "connections" to New York (Opp. at 10) is more than

a stretch.  The board of directors approved, rather than made, the decisions at issue, and none of

the directors is alleged to live in New York.  Insofar as they are relevant to this case, the

directors' strong "ties" and "connections" are to Chesapeake.  The one director involved in

making the decisions at issue, President and Chief Executive Officer Robert "Doug" Lawler,

both lives and works in Oklahoma City. *See* Dell'Osso Decl. ¶¶ 2, 10.

In the face of the obvious and well-documented inconvenience to Chesapeake of

proceeding in New York, Plaintiffs baldly assert "transfer would simply shift the inconvenience

to Plaintiffs." Opp. at 5.  That is obviously not the case.  Plaintiffs had no involvement in any of

the decisions or actions at issue, and no meaningful evidence to give.  Moreover, they have sued

on behalf of a nationwide class.  The cases from which they abstracted the "shifts the

convenience" language were not class actions or remotely like this one, in which it is clear that

---

[1] The Opposition asserts that the convenience of witnesses should not weigh in Chesapeake's favor because the Company has failed to describe the testimony that they will give. Opp. at 6.  In fact, the declarations provided in support of this motion are voluminous, and very specifically detail the testimony that the witnesses can provide. Further, the Opening Brief (at pp. 12-13) specifically links the testimony of likely witnesses to the allegations of the Complaint, and demonstrates the subject matter of their testimony.  The Opposition asks what "non-privileged information that [Chesapeake] would expect its outside counsel to testify about" (Opp. at 8) -- Chesapeake would expect them to testify on the actions and decisions at issue to the extent their knowledge is not privileged.

"plaintiffs' individual knowledge is not a significant factor."  *In re Nematron Corp. Sec. Litig.*, 30 F. Supp 2d 394, 402 (S.D.N.Y. 1998).

### C.    FORUM'S FAMILIARITY WITH GOVERNING LAW

As noted in the Opening Brief (at p. 17), the "forum's familiarity with governing law . . . is one of the least important factors in determining a motion to transfer."  Federal courts are well-versed in applying federal law, as well as state-law contract principles, and the locus of operative facts is far more important under the analysis mandated by Section 1404(a).  *See*, *e.g.*, *Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d at 407 ("[t]hat New York may be central in many securities actions does not negate the fact that Michigan is the locus of operative facts").

 Furthermore, Plaintiffs' argument that their claim under the TIA should be resolved by this Court because the S.D.N.Y. has experience with the TIA (Opp. at 13), was rejected by the S.D.N.Y. in *Polaroid Corp.* more than fifty years ago.  *See* 213 F. Supp. 379, 383-84 (S.D.N.Y. 1962).  In *Polaroid*, plaintiff opposed transfer of a case brought under Section 16(b) of the Securities Exchange Act of 1934, arguing that "[v]irtually all of the cases involving Section 16(b) . . . have been brought and decided in this District, regardless of the remoteness of defendant's residence."  *Id.* at 383.  In rejecting that argument, the court noted that (as here) plaintiff's chosen "forum has no real connection to the litigation," and that plaintiff seemingly opposed transfer to take advantage of beneficial precedent in the S.D.N.Y., and held that "[t]he federal courts comprise a single system applying a single body of law, and [plaintiff] has no right to have the interpretation of one federal court rather than that of another determine his case." *Id.*

The Opposition's attempt to argue that this case implicates "complex or novel issues of New York law" that would prevent transfer (at p. 14) is based on cases that provide no support for that assertion.  *See* Opp. at 14.   The cases are either factually inapposite (*see Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367 (S.D.N.Y. 2006) (discussing a

forum selection clause, not a choice of law clause as here) and *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.,* 865 F. Supp. 513, 520 (2d Cir. 1989) (finding no "particularl[y] prominen[t]" ties to defendant's proposed forum)); or do not contain the "rule" Plaintiffs purport to cite (*see Syntroleum Corp. v. Fletcher Int'l Ltd.*, 2008 WL 4936503 (N.D. Okla. Nov. 17, 2008) (motion to transfer moot because case dismissed for lack of personal jurisdiction).

D.     **WEIGHT ACCORDED PLAINTIFFS' CHOICE OF FORUM**

Plaintiffs' choice of forum is afforded no weight because "the operative facts have few meaningful connections" to the forum and Plaintiffs are asserting claims on behalf of a nationwide class.  *See* Opening Br. at 18.  While that is decisive, Plaintiffs also concede that they are not residents of the Southern District of New York, and that they did not purchase their notes in New York.  Opp. at 2; Lapka Decl. ¶ 3; Cummings Decl. ¶ 3.

E.     **TRIAL EFFICIENCY AND INTERESTS OF JUSTICE**

The docket conditions of the transferor and transferee courts are also relevant to the determination of a motion to transfer.  *See* Opening Br. at 18.  The Opening Brief established that the Southern District of New York has a significantly more crowded docket than the Western District of Oklahoma, with over eleven times the number of pending cases and more than double the number of pending cases per judge.  *See id.* at 19.  The median time from filing to trial for civil cases in the Southern District of New York is 70% greater than in the Western District of Oklahoma – 25.3 months and 14.9, respectively.  *See* Farmer Decl. at Ex. O.  Courts regularly consider the median time from filing to trial when deciding motions to transfer.  *See, e.g., Ward v. Stewart*, 133 F. Supp. 3d 455, 467 (N.D.N.Y. 2015).

Plaintiffs do not dispute that the Western District of Oklahoma is capable of expeditiously resolving this dispute.  Instead, the Opposition lists court rules that set discovery deadlines, ignoring the obvious fact that the Western District of Oklahoma has its own set of

local rules that set similar deadlines.  Nor has "this Court . . . yet devoted significant judicial resources" to the case.  *See* Opening Br. at 19; *O'Hopp v. ContiFinancial Corp.*, 88 F. Supp. 2d 31, 36 (E.D.N.Y. 2000) (transferring to S.D.N.Y. where "most of the events at issue" occurred, and E.D.N.Y. had not "expended considerable time and resources" on case).

### F.      REMAINING FACTORS

The remaining factors are the location of documents, the relative means of the parties, and the ability of the courts in S.D.N.Y. and W.D. Okla. to subject the potential witnesses to compulsory process.  The first factor favors transfer as nearly every document in this case is located in the Western District of Oklahoma.  *See* Opening Br. at 16.  The second factor is meaningless in the context of a nationwide securities class action where the Plaintiffs are represented by well-financed law firms that are in the business of funding class actions. Plaintiffs concede the third factor is neutral.  Opp. at 12.

### III.    PLAINTIFFS' REFERENCES TO PRIOR LITIGATION REINFORCE THE REASONS TRANSFER IS APPROPRIATE HERE

Unable to reasonably argue the elements of Section 1404(a), the Opposition invites the Court to deny transfer on the grounds that Chesapeake has previously litigated unrelated matters in the Southern District of New York.  *See* Opp. at 1 ("Chesapeake itself has filed its own lawsuits" in this district).  That invitation is legally misconceived, because motions for transfer must be determined on an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (emphasis added).  "Each case turns on its facts," and "[t]he facts in [those prior cases] were quite different from those before us now."  *Koster v. (American) Lumbermans Mut. Casualty Co.*, 330 U.S. 518, 528 (1947) (emphasis added, citation omitted).  The facts of *this* case indisputably favor a transfer, and the two cases Plaintiffs characterize as "many" and "all" merely underscore that conclusion.

Citing *Chesapeake Energy Corp. v. Bank of NY Mellon Trust Co., N.A.*, No. 13-cv-1582 (S.D.N.Y.), the Opposition proclaims that if "S.D.N.Y [was] perfectly suitable" for Chesapeake as a plaintiff, the Company "cannot be heard to complain of litigating here when it is the defendant." Opp. at 5. But in that lawsuit Chesapeake sued Bank of New York Mellon Trust to challenge decisions made by the bank in *New York*. *See* Declaration of Robert P. Varian ("Varian Decl.") at Ex. A, ¶¶ 9, 17-19.[2] By the same token, this case should be transferred to the district where Chesapeake is located and the decisions and actions occurred. *See* Opening Br. at 7-11 (the locus of the challenged decisions is the primary factor for a motion to transfer). Furthermore, in that case Chesapeake sought declaratory relief on an extremely expedited basis. *See* Varian Decl. Ex. B at 1 ("Chesapeake needs this declaration . . . before the expiration of [a] 60-day period"). Given that urgency, the Company necessarily avoided any motion to transfer that might have delayed the proceedings.

Chesapeake did not even file the other case relied on in the Opposition, *McCall v. Chesapeake Energy Corp.*, No. 10-cv-08897 (S.D.N.Y.). Plaintiffs nevertheless argue that Chesapeake previously "defended itself in at least one action brought in the S.D.N.Y. without moving to transfer venue." Opp. at 5. In that case, however, Chesapeake was one of over a dozen defendants, many of whom were located in New York and not interested in removal to Oklahoma. *See* Varian Decl. Ex. C at ¶¶ 18-26, 30-31. More importantly, in sharp contrast to the facts here, the challenged transactions in that case were alleged to be "Wall Street bank devised, structured, funded and administered," with "the actual day to day operations of the various [challenged] transactions [all] carried out by the Bank Defendants' energy trading

---

[2] Under settled law, each of the exhibits attached to the Varian Declaration may be considered by the Court in deciding the motion to transfer. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008).

departments, located primarily in S.D.N.Y." *Id.* at ¶ 36.  Once again, the facts were

fundamentally different, and the reasons for litigating the case in this District in that case support

transfer of this case to Oklahoma.

For obvious reasons Plaintiffs do not discuss the transfer motion in *Safron Capital* or the

reasons Judge Swain transferred that securities class action to Oklahoma.  As discussed in the

Opening Brief at pages 19-20, that case is particularly instructive here.  It show clearly how and

why a transfer of this case to the Western District of Oklahoma is the only appropriate course

under Section 1404(a) and the applicable case law.  The reasons are essentially identical, and the

plaintiffs in *Safron Capital* had also sued underwriters headquartered in New York.

## IV.     PLAINTIFFS' ACCUSATION OF FORUM-SHOPPING IS UNFOUNDED AND IRRELEVANT

Perhaps because they have no meaningful counter to the substantive, real-world reasons

why this case should be transferred to Oklahoma, Plaintiffs characterize this motion as a "thinly

veiled" exercise in forum shopping, motivated by a "wish to avoid the application of unfavorable

law." Opp. at 17-18.  That accusation has no foundation in fact, and more importantly is

irrelevant under the Section 1404(a) analysis.  The reasons for this motion are set forth in the

Opening Brief, and they are the same reasons that Chesapeake filed the transfer motion in *Safron

Capital*, and the same reasons that this case should be transferred as well.

## V.     CONCLUSION

For the reasons detailed in the Opening Brief, the Court should respectfully grant

Chesapeake's motion and transfer this case to the Western District of Oklahoma.

Dated:  San Francisco, California
        May 17, 2016

Respectfully submitted,


ORRICK, HERRINGTON & SUTCLIFFE LLP



By:  _____/s/ Robert P. Varian_____
            ROBERT P. VARIAN (SBN 107459)
            *Email:  rvarian@orrick.com*

            Attorneys for Defendants


The Orrick Building
405 Howard Street
San Francisco, California  94105-2669
Tel:  415-773-5700
Fax: 415-773-5759


ORRICK, HERRINGTON & SUTCLIFFE LLP



By:  _____/s/ Jason M. Halper_____
            JASON M. HALPER (SBN 2483345)
            *Email:  jhalper @orrick.com*

            Attorneys for Defendants

51 West 52nd Street
New York, NY  10019
Tel:  212-506-5000
Fax:  212-506-5151